**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NATALIE MORRIS, *et al.*, on behalf of herself and all others similarly situated, | : : : : | CASE NO. _____ |
| | : | JUDGE _____ |
| Plaintiffs, | : | |
| v. | : : | MAGISTRATE JUDGE |
| NATIONWIDE CHILDRENS HOSPITAL, | : : | |
| | : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

1.      Plaintiff Natalie Morris, on behalf of herself and all similarly situated individuals, brings this collective and class action against Defendant Nationwide Children's Hospital for monetary, declaratory, and injunctive relief due to their willful failure to compensate employees for all hours worked and the correct amount of overtime pay in violation of the Federal Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§201, *et seq.*, The Ohio Minimum Fair Wage Standards Act ["the Ohio Wage  Act"], O.R.C. §§4111.01.*, 4111.03 and 4111.10*, and the Ohio Prompt Pay Act ["the OPPA"] committed by only paying non-exempt employees in the Psychometrician position for the scheduled time they worked and not for tasks necessary to their primary job duties which they were required to perform either before or after their scheduled time and only paying employees in the position within a forty (40) hour workweek regularly. In an attempt to remedy this, Nationwide Children's Hospital circulated a letter to effected employees admitting liability and offering to pay for hours worked over the past two (2) years that may have been considered overtime hours as a lump sum payment as wages in effected employees' next paycheck. However, for Ms. Morris this period referenced by Defendant only spanned back to February 3, 2018, despite her working for Nationwide Children's Hospital since approximately October 17, 2016.

-- 1 --

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. §§1331 (federal question) and 1337(a) (statutory regulation of commerce) and 29 U.S.C. §216(b).

3.      This Court has supplemental jurisdiction over Plaintiffs' Ohio Wage Act and OPPA claims pursuant to 28 U.S.C. §1367.

4.      Venue in this Court is proper pursuant to 28 U.S.C. §1391 and S.D. Ohio Civ. R. 82.1(b) because Plaintiffs employed by Defendant in Ohio performed their job duties for Defendant in the Eastern Division where Defendant regularly conducts business.

## PARTIES

5.      Plaintiff Natalie Morris ("Plaintiff Morris" or "Named Plaintiff") began working for Defendant as a Psychometrician on approximately October 17, 2016. Her consent to join as a plaintiff is attached as **Exhibit A**.

6.      At all times material to this Complaint, Defendant Nationwide Children's Hospital ("Defendant Nationwide" or "Defendant") was an Ohio domestic nonprofit corporation that operated as a pediatric hospital and provided patient care, advocacy for children and families, and pediatric research, among other services.

7.      According to its website, Defendant has sixty-eight (68) facilities across Ohio and beyond the State's boundaries[1].

8.      Defendant employs approximately 12,984 individuals[2] and maintains a national reputation, as it has been ranked as one of America's Best Children's Hospitals by US News & World Report[3], is headquartered in Columbus, Ohio (Franklin County), and can be served through its registered agent, Rhonda L. Comer, at 700 Children's Drive, 7th Floor-OCC, Columbus, OH 43205.

---

[1] See nationwidechildrens.org/about-us, last visited on June 19, 2020
[2] See https://www.nationwidechildrens.org/about-us/our-story/fast-facts, last visited on June 19, 2020
[3] See https://health.usnews.com/best-hospitals/area/oh/nationwide-childrens-hospital-6410950, last visited on June 19, 2020.

## DEFENDANT'S BUSINESS PRACTICES

9.      Prior to this lawsuit, Defendant adhered throughout its operations to the common business practice of requiring non-exempt employees in their Psychology Unit, like Plaintiff Morris ("Named Plaintiff") and those similarly situated to her "Putative Plaintiffs", to arrive before their scheduled shift up to fifteen (15) minutes early and require them to perform necessary and important tasks which were integral and indispensable to their principal activities during that time, specifically conducting direct administrative testing of cognitive and executive functioning with children ranging from twelve (12) months to eighteen (18) years of age, among other tasks, all while working under the direction of a licensed psychologist within the department.

10.      Defendant required psychometricians, like the Named Plaintiff and the Putative Plaintiffs, to track their own hours and email those hours to an administrative department that handles payroll.

11.      Defendant scheduled the Named Plaintiff and the Putative Plaintiffs a one (1) hour unpaid lunch break every day.

12.      The Psychology Unit held multiple meetings informing the psychometricians to limit their hours recorded to eighty (80) hours within two (2) workweeks.

13.      From approximately December 2016 to January 2017, Defendant changed its work-time recording procedures from requiring employees to track their own hours to a clock-in/clock-out procedure via one's personal telephone , referred to by Defendant as the "Teletime Application."

14.      During this approximately one-month period of clocking time, Named Plaintiff and the Putative Plaintiffs would clock in on their own phone through the Teletime Application and subsequently clock out through this application.

15.      As a psychometrician, Named Plaintiff and the Putative Plaintiffs would regularly administer appointments for patients ranging from twelve (12) months to eighteen (18) years for the purpose of administering testing of cognitive and executive functioning.

16.      Prior to scheduled appointments, Named Plaintiff and  the Putative Plaintiffs were required to arrive at least fifteen (15) minutes early to perform necessary and important preparatory

tasks, such as setting up the testing room, gathering all materials necessary for the appointment within the room, and receiving a brief from the licensed psychologist, which were all integral and indispensable to their principal activities during that time.

17.     After scheduled appointments, Named Plaintiff and the Putative Plaintiffs were required to stay for at least fifteen (15) minutes after the conclusion of the appointment to perform other necessary and important tasks, such as wiping down all of the materials, returning all of the testing kits to their original briefcases, documenting testing observations into computer records, and briefing the licensed psychologist about the details of the appointment.

18.     Because Named Plaintiff and the Putative Plaintiffs work with different psychologists on a weekly basis, all of whom have different schedules, Named Plaintiff and the Putative Plaintiffs do not maintain a consistent schedule and, therefore, often must cut short their scheduled one (1) hour lunch within the eight (8) in the morning to five (5) in the evening workday in order to accommodate the inconsistent schedule.

19.     Named Plaintiff and the Putative Plaintiffs were not compensated for their time when they worked during their unpaid one (1) lunch break.

20.     Defendant's common business practice was for, in addition to administering appointments, psychometricians within the Psychology Unit to occasionally document scores of the appointment from standardized forms that the parents of patients had returned to the psychologist at the end of the appointment by inputting said scores into the system, as well as inputting into the system the results from the standardized tests that were administered while in person.

21.     After the approximately one (1) month period where Defendant required the Named Plaintiff and the Putative Plaintiffs to clock time, a meeting was held at the behest of the psychometricians supervisor (a clinical lead) ordering the psychometricians to stop clocking their time and to revert back to the system of recording their own hours and emailing them to payroll, so as to have psychometricians work closer to forty (40) hours per week.

22.     Because of the preparatory time, amount of appointments and patients, the inconsistent schedule which often yields a shorter-than-scheduled lunch break, and the detail-

oriented nature of the work, employees within the Psychometrician position often must work in excess of forty (40) hours within a workweek in order to both adequately and thoroughly perform the work required for the job.

23.     Named Plaintiff and the Putative Plaintiffs regularly worked over forty (40) hours within a workweek from the time she began working at Defendant's hospital on approximately October 17, 2016.

24.     On approximately June 16, 2020, Named Plaintiff received a letter from Defendant admitting liability for failing to pay Named Plaintiff and the Putative Plaintiffs overtime hours that had been earned during their employment, as Defendant had improperly classified the Psychometrician position as an exempt position, rather than a non-exempt position.

25.     Within the letter admitting liability, Defendant reclassified the Psychometrician position as a non-exempt position.

26.     On approximately June 16, 2020, Named Plaintiff received a letter from the U.S. Department of Labor regarding her gross amount of back wages earned under the FLSA for the period beginning with the workweek ending February 3, 2018 through the workweek ending November 9, 2019, totaling $4,056.25, despite not being paid at 150% of her regular hourly rate for all hours worked over forty (40) in a workweek since beginning her employment on approximately October 17, 2016.

27.     Defendant did not show a good faith basis for why it classified the Psychometrician position as salary exempt.

28.     Defendant is in possession of Named Plaintiff's and the Putative Plaintiffs', employment records.

29.     As a result of a prior complaint, beginning on approximately June 29, 2020, Defendant will return to having its employees clock time using the Teletime Application.

30.     Based on Defendant's common business practice before this lawsuit, excluding the approximately one (1) month of clocking time practices and procedures, Named Plaintiff's and Putative Plaintiffs' compensation did not start until their scheduled shifts began.  Defendants did not compensate Named Plaintiff and Putative Plaintiffs for the work performed prior to the

scheduled start of their shift, despite both Defendant and the sensitive nature of the work requiring employees to arrive at least fifteen (15) minutes prior to scheduled shifts and appointments. Shortly after a lawsuit was filed, Defendant changed its employment practices and policies to reduce or eliminate uncompensated time worked during a scheduled shift, demonstrating that doing so has been feasible throughout the tenure of Named Plaintiff and Putative Plaintiffs.

31. Defendants' common business practice before the Department of Labor investigation was to only pay Named Plaintiff and Putative Plaintiffs in psychometrician positions until the end of their scheduled shift time and not to pay for any work performed after the end of their scheduled appointments, often done outside of the time of a scheduled shift, even though they were still performing necessary and important tasks which were integral and indispensable to their principal activities during that time. Shortly after the Department of Labor investigation, Defendant changed its employment practices and policies to reduce or eliminate uncompensated time worked after a scheduled shift, demonstrating that doing so has been feasible throughout the tenure of Named Plaintiff and Putative Plaintiffs.

32. Named Plaintiff and Putative Plaintiffs were recording their own time, per Defendant's employment practices and policies, when all their work was being performed; however, Named Plaintiff and the Putative Plaintiffs to limit their recorded hours worked to eighty (80) hours within two (2) workweeks, despite Named Plaintiff and the Putative Plaintiffs often actually exceeding this amount of hours worked within two (2) workweeks.

33. The amount of time the Named Plaintiff and Putative Plaintiffs worked prior to their shift and after their shift, often occurring as necessary preparatory and conclusory work, did not vary significantly but was integral and indispensable to their principal activity and involved more than fifteen (15) minutes before to set up the testing room, gather all materials within the room necessary for the appointment, and receive a brief from the licensed psychologist, and fifteen (15) minutes after their appointment to wipe down all of the materials, return all of the testing kits to their original briefcases, document the testing observations into computer records, and brief the licensed psychologist about the details of the appointment

34.     Named Plaintiff and Putative Plaintiffs were not paid for performing the pre-appointment and post-appointment tasks, often done outside of the time of a scheduled shift, that were integral and indispensable to their principal activity in violation of federal and state wage laws, nor were they paid for lunch breaks that were often less than the one (1) hour time-period they were scheduled for as Named Plaintiff and the Putative Plaintiffs must work with different psychologists on a weekly basis who all maintain different schedules, and therefore must work to accommodate those respective schedules.

35.     Defendants did not calculate, as part of the Named Plaintiff's and Putative Plaintiffs' workweek, the time they spent on the tasks integral and indispensable to their principal activity, pre-shift and post-shift, in violation of federal and state wage laws.

36.     Further, when the addition of the unpaid time is added to the Named Plaintiff's and Putative Plaintiffs' hours for the workweek, Defendants willfully failed to pay them for the additional time at one-and-one-half times (1.5) their regular rate in violation of federal and state wage laws.

37.     At all times material to this Complaint, Defendant knew and recorded the amount of time the Named Plaintiff and Putative Plaintiffs spent on tasks that were integral and indispensable to their principal activity pre-shift and post-shift, but willfully failed to pay them in violation of federal and state wage laws.

38.     The pre-appointment and post-appointment work, often done outside of the time of a scheduled shift, performed by Named Plaintiff and Putative Plaintiffs directly benefited Defendant by reducing the cost of labor for Defendant who willfully withheld compensation for that work from them.

39.     The Named Plaintiff and Putative Plaintiffs are engaged in a business enterprise when they perform their job duties and when they perform tasks that are integral and indispensable to their principal activity pre-shift and post-shift.

40.     The Named Plaintiff and Putative Plaintiffs are hourly employees.

41.     Defendant employs both "exempt" and "non-exempt" employees and have characterized the Named Plaintiff and Putative Plaintiffs as "non-exempt."

42.     The Named Plaintiff and Putative Plaintiffs are not in a job classification and do not perform job duties which are exempt from the mandate under the FLSA and/or the Ohio Wage Act to pay for all hours worked and/or overtime.

43.     As a direct and proximate result of Defendant's unlawful conduct, the Named Plaintiff and Putative Plaintiffs have suffered and will continue to suffer a loss of income.

44.     For the Named Plaintiff and all others similarly situated, the aggregate number of hours worked and not compensated, and the overtime denied to them represents dollars that could be expended on meals, refreshments, travel expenses and/or consumer purchases or could be saved.

45.     For the Named Plaintiff and all others similarly situated, the aggregate amount of overtime denied to them represents time Defendant has required they dedicate to performing tasks integral and indispensable to their principal activity, such as direct administration of testing of cognitive and executive functioning with children from twelve (12) months through eighteen (18) years of age, as well as documenting scores of appointments from standardized forms that the parents of patients would return to the psychologist at the end of appointments by inputting said scores into the system, as well as inputting into the system the results from the standardized tests that were administered while in person.

## COLLECTIVE ACTION AND CLASS ALLEGATIONS

46.     Named Plaintiff brings this action on behalf of herself and all others similarly situated as a collective action for unpaid wages and overtime under the FLSA, 29 U.S.C. §216(b).

47.     The collective class, or Opt-In Class, which Named Plaintiff seeks to represent is composed of and defined as follows ["FLSA Collective Class"]:

> All current or former Psychometricians employed by Nationwide Childrens Hospital during the past three years who were paid from the beginning of their shift until the end of their shift and not paid for the work they performed before and after they clocked in each day and were not paid 150% of their regular rate for all hours worked in excess of forty (40) in a workweek.

48.     Named Plaintiff brings the Ohio Wage Act and OPPA claims pursuant to Federal Rule of Civil Procedure 23 as a class action under Ohio law on behalf of the following class ["Ohio Rule 23 Class"]:

> All current or former Psychometricians employed by Nationwide Childrens Hospital in the state of Ohio during the past three years who were paid from the beginning of their shift until the end of their shift and not paid for the work they performed before and after they clocked in each day and were not paid 150% of their regular rate for all hours worked in excess of forty (40) in a workweek.

49.     The FLSA Collective Class and the Ohio Rule 23 Class, as defined above, are so numerous that joinder of all members is impracticable.

50.     Named Plaintiff is a member of the FLSA Collective Class and the Ohio Rule 23 Class and her claims are typical of the claims of the members of the FLSA Collective Class and the Ohio Rule 23 Class as defined; indeed, apart from the hourly rate and number of days worked and the precise tasks in Defendant's departments, Named Plaintiff and the FLSA Collective Class and the Ohio Rule 23 Class are similarly situated in all material respects, including; the nature of the tasks that are integral and indispensable to their principal activity pre-shift and post-shift and the uniform policies and practices of Defendant in not paying for the time spent working.

51.     Named Plaintiff will fairly and adequately represent the FLSA Collective Class and the Ohio Rule 23 Class and the interests of all members of the FLSA Collective Class and the Ohio Rule 23 Class.

52.     Named Plaintiff has no interest that is antagonistic to or in conflict with those interests that she has undertaken to represent on behalf of the FLSA Collective Class and the Ohio Rule 23 Class as Class Representatives; instead, their interests perfectly coincide with those of individuals similarly situated in all material respects.

53.     Named Plaintiff retained competent and experienced class action counsel who can effectively represent the interests of the entire FLSA Collective Class and the Ohio Rule 23 Class.

54.     Questions of law and fact that are common to the FLSA Collective Class and the Ohio Rule 23 Class predominate over any individual questions, specifically whether Defendant violated the FLSA and/or the Ohio Wage Act by omitting the pre-shift and post-shift time it takes to perform tasks that are integral and indispensable to the class members' principal activity from its calculation of the hours Named Plaintiff and Putative Plaintiffs have worked.

55.     In both the FLSA Collective Class and the Ohio Rule 23 Class there is a community of interest among the class members in obtaining appropriate relief, damages, and compensation for costs and fees incurred herein.

56.     A collective action for the federal overtime claim and a Rule 23 class action for the Ohio overtime claim and OPPA claim are superior to other litigation methods (including individual litigation) for the fair and efficient adjudication of Named Plaintiff's and Putative Plaintiffs' claims as presented by this Complaint and will prevent undue financial, administrative, and procedural burdens on the parties and the Court.

57.     Named Plaintiff and her counsel are not aware of any pending Ohio litigation on behalf of the FLSA Collective Class and the Ohio Rule 23 Class, as defined herein, or individual Class members related to these claims.

58.     Because the damages sustained by individual members of the Class are modest compared to the substantial resources of Defendant and due to the costs of individual litigation, it will be impracticable for Class members to pursue individual litigation against Defendant in order to vindicate their rights, and individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant with respect to its employees.

59.     Named Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a FLSA Collective Class or a Rule 23 Class.

**COUNT I:**
**FLSA Collective Action**

60.     All previous paragraphs are incorporated as though fully set forth herein.

61.     By not paying for all hours worked and for not paying one-and-one-half times the regular hourly rate to Named Plaintiff and the putative FLSA Collection Class for hours worked in excess of forty hours each week when the time spent performing tasks that are integral and indispensable to their principal activity pre-shift and post-shift and the work performed during the unpaid lunch is included, Defendant has  violated the FLSA.

62.     In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

**COUNT II:**
**Ohio Rule 23 Class Action**

63.     All previous paragraphs are incorporated as though fully set forth herein.

64.     By not paying for all hours worked and for not paying one-and-one-half times the regular hourly rate to Named Plaintiff and the Ohio Rule 23 Class for hours worked in excess of forty hours each week when the time spent performing tasks that are integral and indispensable to their principal activity pre-shift and post-shift and the work performed during the unpaid lunch is included, Defendant has violated the Ohio Wage Act.

65.     In violating the Ohio Wage Act and the OPPA, Defendants acted willfully and with reckless disregard of clearly applicable Ohio Wage Act and OPPA provisions.

**COUNT III**
**(Ohio Rule 23 Class - Violations of the Ohio Prompt Pay Act, R.C. 4113.15)**

66.     All previous paragraphs are incorporated as though fully set forth herein.

67.     During all relevant times, Defendant has been an entity covered by the OPPA and Named Plaintiff and the Putative Ohio Rule 23 Class Members have been employed by Defendant within the meaning of the OPPA.

68.     The OPPA requires that the Defendant pay Named Plaintiff and the Putative Ohio Rule 23 Class Members all wages, including unpaid overtime, on or before the first day of each month, for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by them during the last half of the preceding calendar month. R.C. § 4113.15(A).

69.     During all relevant times to this action, Named Plaintiff and the Putative Ohio Rule 23 Class Members were not paid all wages, including overtime wages at one and one-half times their regular rates within thirty (30) days of performing the work.

70.     The wages of Named Plaintiff and the Putative Ohio Rule 23 Class Members remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

71.     In violating the OPPA, Defendant acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law.

## PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff and the Putative Plaintiffs are entitled to and pray for the following relief:

A.     An order permitting this litigation to proceed as a FLSA representative action and an Ohio state law Rule 23 class action;

B.     Prompt notice, pursuant to 29 U.S.C. §216(b), to all FLSA Collective Class members that this litigation is pending and that they have the right to "opt in" to this litigation;

C.     With respect to Named Plaintiff and each Putative Plaintiff, compensatory damages in an amount equal to the difference between the time-and-a-half payments required under the FLSA and the Ohio Wage Act and the amount of compensation actually paid by Defendants;

D.     Liquidated damages to the fullest extent permitted under federal and state law;

E.     Costs and attorneys' fees to the fullest extent permitted under federal and state law;

F.     Pre-judgment and post-judgment interest to the fullest extent permitted under federal and state law; and,

G.     Such other relief as the Court deems fair and equitable.

**Named Plaintiff Demands a Trial by Jury**

Dated: June 24, 2020                              Respectfully Submitted,

**BARKAN MEIZLISH DEROSE**
**WENTZ MCINERNEY PEIFER, LLP**

**By:** /s/*Robert E. DeRose*
Robert E. DeRose (OH Bar No. 0055214)
Jessica R. Doogan (OH Bar No. 0092105)
250 East Broad Street, 10th Floor
Columbus, OH 43215
Phone: (614) 221-4221
Facsimile: (614) 744-2300
bderose@barkanmeizlish.com
jdoogan@barkanmeizlish.com

*Counsel for Plaintiffs*