UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NATALIE MORRIS, *et al.*,
on behalf of herself and all others
Similarly situated,

    Plaintiffs,   :   Case No. 2:20-cv-3194

    -vs-      Judge Sarah D. Morrison

           Magistrate Judge Jolson

NATIONWIDE CHILDREN'S
    HOSPITAL,
                                :

    Defendant.

## OPINION AND ORDER

This matter is before the Court upon Plaintiff Natalie Morris' Motion for Conditional Class Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs (ECF No. 13), Defendant Nationwide Children's Hospital's Memorandum in Opposition (ECF No. 17), and Plaintiff's Reply (ECF No. 19).

For the reasons below, the Court **GRANTS** the Motion for Conditional Class Certification as of the date of this Opinion and Order and **DENIES** the motion to approve Notice to Potential Opt-In Plaintiffs **WITHOUT PREJUDICE**. The Court **ORDERS** the Parties to meet and confer regarding the Notice to Potential Opt-In Plaintiffs.

    I.   BACKGROUND

Defendant Nationwide Children's Hospital has employed Plaintiff Natalie Morris as a psychometrician since October 17, 2016. (ECF No. 1, ¶ 5). In this role,

1

Ms. Morris administers cognitive and executive functioning testing for pediatric patients under the direction of a licensed psychologist. (*Id*. at ¶¶ 9, 15). Nationwide is an Ohio non-profit pediatric hospital and research center that provides pediatric medical care, among other things. (ECF No. 9, ¶ 8).

Ms. Morris claims she was not paid for work she performed in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. and corresponding Ohio law. (ECF No. 1, ¶ 1). She identifies three categories of unpaid work: pre-shift, post-shift, and meal break. (*Id*. ¶ 34). Moreover, by combining her unpaid work with her paid work, Ms. Morris alleges that Nationwide failed to pay her one-and-half-times her regular rate for hours worked in excess of 40 hours per week. (*Id*. ¶ 36). She claims that she witnessed other employees suffer the same pay practices. (*Id*. ¶ 9). Ms. Morris supports these allegations with her declaration and the declarations of two other Nationwide psychometricians, Ms. Studer and Mr. Hannon. (ECF Nos. 13-1–13-3).

All three Declarants tell a similar story. (Morris Decl., ¶ 2; Studer Decl., ¶ 2; Hannon Decl., ¶ 2). They needed to arrive 15 minutes before their scheduled shifts to prepare for appointments, including setting up the testing room, gathering materials, and receiving briefs from licensed psychologists. (Morris Decl., ¶ 4; Studer Decl., ¶ 3; Hannon Decl., ¶ 3). Declarants were also often required to stay for at least 15 minutes after their shifts to wipe down materials, return testing kits, document and input testing data, and brief licensed psychologists about appointments. (Morris Decl., ¶ 5; Studer Decl., ¶ 4; Hannon Decl., ¶ 4). Finally,

Declarants were often required to cut short or work through their unpaid, one-hour lunch breaks to accommodate schedules of the varying psychologists. (Morris Decl., ¶ 7, Studer Decl., ¶ 7, Hannon Decl., ¶ 7). As a result, they claim that Nationwide failed to pay them for work performed, and failed to pay overtime rates for hours worked in excess of 40 hours per week in violation of the FLSA. (ECF No. 1, ¶ 1).

Declarants reported their time in two ways. Mainly, Declarants reported their own hours by email. (Morris Decl., ¶ 8; Studer Decl., ¶ 6; Hannon Decl., ¶ 8, ECF No. 13-1–13-3). But regardless of the hours worked, Declarants were instructed to never record more than 80 hours over two work weeks. (Morris Decl., ¶¶ 8–9; Studer Decl., ¶¶ 8–9; Hannon Decl., ¶ 8). For about a month, however, Declarants reported their time using a timekeeping application instead of email. (Morris Decl., ¶11; Studer Decl., ¶ 6; Hannon Decl., ¶ 6). Declarants reported more than 40 hours per workweek using this method. (*See* Morris Decl., ¶ 11). This method was only in place from December 2016 to January 2017. (*Id.*).

In July 2018, Mr. Hannon submitted a complaint to the United States Department of Labor ("DOL"). (Hannon Decl., ¶ 9). The DOL Complaint alleged that Nationwide incorrectly classified the psychometrician position as exempt. (*Id.*). Around two years later, in June 2020, Ms. Morris received a letter from Nationwide admitting that it had improperly classified the psychometrician position as exempt. (Morris Decl., ¶ 14). The position was then reclassified as a non-exempt. (*Id.* ¶ 15).

At the same time, Ms. Morris received a letter from the DOL concerning back wages under the FLSA. (Morris Decl., ¶ 15). The back wages covered the period

3

from February 3, 2018 to November 9, 2019. (*Id.*). The DOL also notified Mr. Hannon that he was entitled to receive back wages earned under the FLSA for November 25, 2017 through November 9, 2019. (Hannon Decl., ¶ 11).

The period referenced in the DOL letter fails to align with the period of alleged wage and hour violations, which extend from October 2016 to the filing of the Complaint. Ms. Morris, for example, was not offered back wages for hours worked in excess of 40 hours per workweek from October 17, 2016 through February 3, 2018, or after November 9, 2019. (Morris Decl., ¶ 15.) Likewise, Mr. Hannon was not offered back wages for hours worked from October 17, 2016 through November 25, 2017, or after November 9, 2019. (Hannon Decl., ¶ 11). Ms. Studer started work in August 2019 and claims that she suffered similar violations since starting and she does not address receiving an offer for back wages. (Studer Decl., ¶¶ 2, 12).

Ms. Morris filed the Complaint shortly after she received the letters from Nationwide and the DOL. (ECF No. 1). Nationwide denied all claims. (ECF No. 9). Ms. Morris then moved for Conditional Certification and Court-Authorized Notice ("Motion"). (ECF No. 13). While Ms. Morris' Complaint presents a hybrid collective and class action, she now moves only for collective action status under 29 U.S.C. § 216(b).

4

## II. ANALYSIS

### A. Legal Standard

Ms. Morris alleges that Nationwide's failure to pay for pre-appointment and post-appointment work, work completed during a scheduled lunch break, and overtime wages violates the FLSA. Ms. Morris also alleges that a collective class of employees was harmed. The FLSA provides for collective action under § 216(b), which states in part:

> An action to recover the liability . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

"The lead plaintiff bears the burden of showing that the proposed class members are similarly situated to the lead plaintiff." *Casarez v. Producers Serv. Corp.*, No. 2:17-cv-1086, 2018 U.S. Dist. LEXIS 88370, at *4 (S.D. Ohio May 25, 2018) (Sargus, J.) (citation omitted). The Court determines whether Plaintiff sustains her burden to establish that she is similarly situated to the putative collective action members by using a two-phase analysis. *Id.*

The first phase, the conditional-certification phase, is conducted at the beginning of the discovery process. At that point, the "plaintiffs need only make a modest factual showing that they are similarly situated to proposed class members." *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016) (Marbley, J.) (internal quotations omitted). In keeping with the FLSA's remedial purpose, "the standard at the first step is 'fairly lenient . . . and typically results in conditional

5

certification of a representative class.'" *Id.* (quoting *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)).

The final certification stage is the second phase. It is conducted after discovery concludes. When addressing this portion of the analysis, the Court "examine[s] more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547. At this second phase, the Court has much more information to decide whether the proposed plaintiffs are similarly situated. *Id.* Consequently, a much "stricter standard" is employed during the final certification stage. *Id.*

### B.  Conditional Certification

Ms. Morris seeks to collectively certify the following collective class as "similarly situated" under 29 U.S.C. § 216(b):

> All current or former Psychometricians employed by Nationwide Children[']s Hospital during the past three years who were paid from the beginning of their shift until the end of their shift and not paid for the work they performed before and after they clocked in each day and were not paid 150% of their regular rate for all hours worked in excess of forty (40) in a workweek.

(ECF No. 1, ¶ 47).

Neither the FLSA nor the Sixth Circuit defines similarly situated. *Slaughter v. RMLS Hop Ohio, L.L.C.*, No. 2:19-cv-3812, 2020 U.S. Dist. LEXIS 69772, at *6 (S.D. Ohio Apr. 21, 2020) (Sargus, J.). But this Court has held that plaintiffs are similarly situated "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id.* at *6–7 (quoting *Myers*, 201 F. Supp. 3d 884, 890).

6

The Court considers multiple factors to make this determination, including "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread . . . plan was submitted, and whether as a matter of sound class management, a manageable class exists." *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 868 (S.D. Ohio 2011) (Marbley, J.). At this initial stage, the Court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015) (citing *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011) (Dlott, J.))

Ms. Morris meets these factors. First, she is a psychometrician at Nationwide and she identified other psychometricians at Nationwide covered by the same policy, so she identified potential plaintiffs. (Morris Decl., ¶ 6, ECF. No 13-1). Second, Ms. Morris included the declarations of some of the potential plaintiffs. (Studer Decl., ¶ 2, Hannon Decl., ¶ 2, ECF Nos. 13-1, 13-2). Third, Ms. Morris provided evidence of a widespread unlawful policy or practice, including declarations supporting unpaid pre-shift, post-shift, and mealtime work and unpaid overtime. (Morris Decl., ¶¶ 3–7, Studer Decl., ¶¶ 3–7, Hannon Decl., ¶¶ 3–7). She also provided evidence of a policy instructing the psychometricians to underreport their time. (Morris Decl., ¶ 9, Studer Decl., ¶¶ 8–9, Hannon Decl., ¶ 8). Finally, there is no dispute that the proposed class is manageable. Accordingly, the four *Lewis* factors are met here.

In response, Nationwide makes two arguments. (Response, pp. 7–10, ECF No. 18.). First, Nationwide argues that 22 psychometricians waived their FLSA claims by signing a Form WH-58[1] or cashing checks following the DOL investigation. (*Id.*, p. 7). Second, Nationwide argues that three psychometricians work at a different location than Ms. Morris. (*Id.*, p. 10). The Court will address these arguments in reverse order.

As to the location, according to Nationwide, while Ms. Morris and most of the psychometricians work at Nationwide's Child Development Center ("CDC") in Westerville, Ohio, three psychometricians work at Nationwide's main campus. (*Id.*). As a result, Nationwide argues that Ms. Morris is not similarly situated to the main campus psychometricians. (*Id.*). But this location argument is for another day. When considering a pre-discovery motion for conditional certification, the Court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 874 (S.D. Ohio 2017) (Black, J.) (citation omitted). For example, in *Hamm*, this Court found that resolving a dispute over whether security guards in different locations were subject to the same policy required "credibility and factual determinations improper at the conditional certification stage." *Id.* at 876 (citation omitted). Moreover, so long as there is sufficient evidence to show that the putative collective class members were subject to the same company-wide policy, a plaintiff need not submit

---

[1] "A WH-58 is a standard form used by the DOL to inform an employee that, although he has the right to file suit under 29 U.S.C. § 216(b), acceptance of the back wages offered will result in waiver of those rights. The DOL can either authorize an employer to use the WH-58 or authorize other waiver language." *Niland v. Delta Recycling Corp.*, 377 F.3d 1244, 1248 (11th Cir. 2004).

8

declarations from every location. *Farmer v. LHC Grp., Inc.*, No. 2:20-cv-3838, 2020 U.S. Dist. LEXIS 239097, at *10 (S.D. Ohio Dec. 18, 2020) (Graham, J.) (collecting cases).

Here, for purposes of pre-discovery conditional certification, Ms. Morris has met the modest factual showing required as to the disputed location. *Hamm*, 275 F. Supp. 3d at 874; *Farmer*, 2020 U.S. Dist. LEXIS 239097, at *10. Ms. Morris and her declarants state that the FLSA violations resulted from a companywide policy applied to all psychometricians and that a policy was issued by Nationwide's "Psychometrician Supervisors," among other policymakers. (Morris Decl., ¶¶ 8–9, Studer Decl., ¶¶ 5–8, Hannon Decl., ¶ 8, ECF Nos. 13-1–13-3). This is sufficient to establish a reasonable inference that psychometricians, including those at the main campus, worked under the same policy.

Next, Nationwide argues that other than Ms. Morris, Ms. Studer, and Mr. Hannon, 22 psychometricians are not similarly situated because they waived their FLSA claims following the DOL investigation. (Response, p. 9, ECF No. 18). This is a closer call, but again, this argument is made too soon. *See Jungkunz v. Schaeffer's Inv. Rsch., Inc.*, No. 1:11-CV-00691, 2014 WL 1302553, at *9 (S.D. Ohio Mar. 31, 2014) (Dlott, J.).

In *Jungkunz*, a plaintiff sought conditional certification of a collective class of employees that were similarly situated—except that some members of the putative collective class signed DOL-approved waivers. *Id.* at *26. The Court relied on the waivers to deny conditional certification. *Id.* Yet there, the Court considered more

9

than just the waivers. *Id.* Applying the higher "modest plus" standard because discovery had started, the Court recognized that the plaintiff provided "no plausible argument, let alone any evidence, indicating a reason to question the validity or enforceability of those waivers." *Id.*

Like this case, courts applying the lower "modest" standard generally decline to consider signed Form WH-58s, and those that do typically grant conditional certification if there are enforceability questions. *See, e.g.*, *Fitzwater v. Cole*, No. 18-00137-N, 2018 U.S. Dist. LEXIS 201253, at *9 (S.D. Ala. Nov. 28, 2018) ("whether a potential opt-in plaintiff has waived his or her right to seek redress under the FLSA in federal court by accepting a DOL settlement, and whether the settlement and waiver came about through adequate DOL supervision, are issues more appropriately addressed in a motion to dismiss and/or for summary judgment"). *See also Bustamante v. D.O. Prods., LLC*, Civil Action No. 16-4618, 2017 U.S. Dist. LEXIS 140744, at *12 (D.N.J. Aug. 30, 2017) (declining to consider Form WH-58 at the conditional certification stage); *Kuperman v. ICF Int'l*, No. 08-565, 2008 U.S. Dist. LEXIS 88605, at *27 (E.D. La. Oct. 31, 2008) (declining to consider Form WH-58 at the conditional certification stage).

Ms. Morris concedes that the waivers may eliminate some claims, but she also raises questions about the scope of the waivers. (Reply, p. 5, ECF No. 19). Mainly, Ms. Morris provides evidence that the FLSA violations took place before and after the period covered by the waivers. (*See, e.g.*, Studer Decl., ¶¶ 9–13, ECF No. 13-3; Answer, ¶ 29, ECF No. 9) (showing violations continued after November 9,

10

2019). As a result, even if the Court were to consider the signed Form WH-58s or cashed checks, they do not prevent Ms. Morris from meeting the "modest" factual standard required for conditional certification of the psychometrician class. *See Jungkunz*, 2014 WL 1302553, at *9. Nationwide may be correct that 22 psychometricians waived their claims but that is not the issue for today. Nationwide's second argument also fails.

Finally, the Court turns to whether the putative collective class should contain all current and former psychometricians from the "past three years." (ECF No. 1, ¶ 47). Nationwide argues that the putative collective class should be limited to two years instead of three. (Response, p. 12, ECF No. 12).

An ordinary violation of the FLSA is subject to a two-year statute of limitations; however, where a violation is "willful" a three-year statute of limitations applies. *Lemmon v. Harry & David Operations*, Inc., No. 2:15-cv-779, 2016 U.S. Dist. LEXIS 11810, at *16 (S.D. Ohio Jan. 20, 2016) (Smith, J.) (citations omitted). The Court may grant a request to certify a three-year putative collective class based only on the plaintiff's allegation that an employer willfully violated the FLSA. *Id.* Again, a "lenient standard [is] employed at the conditional certification stage." *Id.*

Because Ms. Morris makes such an allegation (ECF No. 1, ¶ 37), the Court conditionally certifies the class for a three-year period; the class period runs three years from the date of this Opinion and Order. *Sutton v. Diversity at Work Grp.*,

*Inc.*, No. 1:20-cv-682, 2020 U.S. Dist. LEXIS 235617, at *9 (S.D. Ohio Dec. 15, 2020) (Black, J.) (citation omitted).

Accordingly, Ms. Morris' Motion for Conditional Class Certification is **GRANTED**.

    **C.**    **Notice**

Ms. Morris also moves the Court to authorize sending her Proposed Notice and Consent to Join form to all putative class members. (ECF No. 13). Nationwide requests that the Parties meet and confer regarding the proposed notice, and in the alternative, presents several modifications. (Response, pp. 11–15, ECF No. 18). The Court will resolve three issues before ordering the Parties to meet and confer.

First, Nationwide need not provide Ms. Morris the phone numbers of all the putative collective class members. *Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-CV-1225, 2019 WL 4667497, at *12 (S.D. Ohio Sept. 25, 2019) (Morrison, J.). It is duplicative and unnecessarily obtrusive at this stage in the litigation, especially considering that Nationwide is willing to provide names, mailing addresses, and email addresses. *Id.*

Second, the Court approves the 90-day opt-in period requested by Ms. Morris. *Andrews v. Producers Serv. Corp.*, No. 2:19-cv-2514, 2020 U.S. Dist. LEXIS 137004, at *12 (S.D. Ohio Aug. 3, 2020) (Sargus, J.) (approving 90-day opt-in period). This strikes the right balance between providing putative collective class members time to consider their options during the present pandemic and a timely resolution.

Third, Ms. Morris asks for a reminder notice. Nationwide accepts that the first notice may be provided by email and first-class mail. (Response, p. 14, ECF No.

18). But with that concession, asks that the Court decline a reminder notice. (*Id.*, p. 15). Courts generally reject reminder notices because there is a risk that it crosses the line from advising potential opt-in plaintiffs of the existence of the lawsuit to encouraging participation. *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 900 (S.D. Ohio 2018) (Sargus, J.) (citing *Wolfram v. PHH Corp.*, Case No. 1:12-cv-599, 2012 U.S. Dist. LEXIS 181073, at *13-14 (S.D. Ohio Dec. 21, 2012) (Black, J.)). Ms. Morris points to *Hamm*, but there the defendant failed to object to the reminder notice. 275 F. Supp. 3d at 879 ("Defendant does not object to service of the Reminder."). Ms. Morris also argues that the mail delivery system may be suspect considering the current pandemic, but that risk is covered by the dual notice method: email and first-class mail. Accordingly, the Court declines to approve the requested reminder notice. *Hall*, 299 F. Supp. at 900.

Within **TEN (10) DAYS** of the date of this Opinion and Order, Nationwide shall identify all putative class members by providing a list in electronic and importable format of the full names, dates of employment, positions of employment, locations of employment, last known mailing addresses, and e-mail addresses of all current and former employees fitting the class description above to Ms. Morris' counsel.

Within **FOURTEEN (14) DAYS** of the date of this Opinion and Order, counsel shall confer and submit a joint draft of a proposed notice to potential plaintiffs about this collective action and a proposed opt-in consent form to morrison_chambers@ohsd.uscourts.gov. The Court will resolve any disputes noted

13

in the draft in an order granting final approval of the notice and opt-in consent form.

The motion to approve Notice to Potential Opt-In Plaintiffs is **DENIED WITHOUT PREJUDICE**.

### III. CONCLUSION

For the reasons above, the Court **GRANTS** the Motion for Conditional Class Certification. The motion to approve Notice to Potential Opt-In Plaintiffs is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE