**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NATALIE MORRIS, *et al.*, | : | |
| on behalf of herself and all others | : | Case No.: 2:20-cv-3194 |
| similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | Judge: Sarah D. Morrison |
| | : | |
| NATIONWIDE CHILDREN'S | : | |
| HOSPITAL, | : | Magistrate Judge: Kimberly A. Jolson |
| | : | |
| Defendant. | : | |

---

## JOINT MOTION FOR APPROVAL OF SETTLEMENT

---

Named Plaintiff Natalie Morris ("Named Plaintiff"), on behalf of herself and the Opt-in Plaintiffs, Abby Studer, and Sean Hannon (collectively the "Opt-in Plaintiffs") (both the "Named Plaintiff" and the "Opt-In Plaintiff" will hereinafter be collectively referred to as "Plaintiffs"), and Defendant Nationwide Children's Hospital ("Defendant") (Plaintiffs and Defendant will be collectively referred to as "the Parties"), hereby respectfully move this Court to review the Parties' Release of All Claims & Settlement Agreement ("Settlement Agreement"), attached hereto as **Exhibit 1** ("**Ex. 1**"), and for an order approving the Settlement Agreement as fair and reasonable. In support of this Motion, the Parties state as follows:

1.　　Plaintiffs commenced this action against Defendant, alleging in part that Defendant failed to pay Plaintiffs' overtime compensation under the Fair Labor Standards Act ("FLSA") and state-law equivalent statutes.

2.　　Defendant has denied liability and wrongdoing of any kind.

1

3.      In an effort to reach a compromise and to avoid the expense and burden of litigation, the Parties have reached a settlement of all claims asserted in the pending action. The terms of the settlement are embodied in the Settlement Agreement. *See* **Ex. 1**.

4.      Plaintiffs' and Defendant's undersigned counsel believe that the proposed Settlement Agreement is fair and reasonable.

5.      The proposed Settlement Agreement is contingent upon the Court's review and approval of it, as well as the Court's issuance of an Order approving the Settlement Agreement as fair and reasonable.

6.      The Parties agree that bona fide disputes exist regarding Plaintiffs' wage-and-hour claims, including the number of hours worked and computation of wages.

7.      The Parties stipulate and agree that the proposed Settlement Agreement: (a) is not the product of fraud or collusion; (b) is in resolution of complex and expensive litigation that is likely to be of a significant duration; (c) accounts for the likelihood of success on the merits by Plaintiffs, as well as the defenses of the Defendant; (d) is reasonable and fair in the opinion of the Parties' counsel; and (e) is in the public's best interest to promote the early resolution of contested claims in litigation.

8.      The Parties, pursuant to Fed. Civ. R. 41(a)(1)(ii) and based upon the attached Settlement Agreement, hereby stipulate to the dismissal of this case with prejudice. The Parties request that this Court retain jurisdiction to enforce the terms of the proposed Settlement Agreement.

WHEREFORE, for the foregoing reasons, the parties request that the Court review the proposed Settlement Agreement (*see* **Ex. 1**) and issue an Order (*see* **Exhibit 2** ("**Ex. 2**"))

approving it as fair and reasonable, and that this case be stipulated as dismissed with prejudice. The Memorandum in Support of this Motion is incorporated herein.

Date: September 10, 2021                          Respectfully Submitted,


/s/Robert E. DeRose                              /s/ James G. Petrie
Robert E. DeRose (0055214)                       James G. Petrie (0059446)
**BARKAN MEIZLISH DEROSE**                       Jill K. Bigler (0083789)
**WENTZ MCINERNEY PEIFER, LLP**                  **Epstein Becker & Green, P.C.**
4200 Regent Street, Suite 210                    375 North Front Street, Suite 325
Columbus, Ohio 43219                             Columbus, Ohio 43215-4291
Tel: (614) 221-4221                              Phone: (614) 872-2500
Fax: (614) 744-2300                              Fax: (614) 633-1713
bderose@barkanmeizlish.com                       jpetrie@ebglaw.com
                                                 jbigler@ebglaw.com

*Counsel for Plaintiffs*

                                                 *Counsel for Defendant,*
                                                 *Nationwide Children's Hospital*

3

<u>**MEMORANDUM IN SUPPORT OF THE JOINT**</u>
<u>**MOTION FOR APPROVAL OF FLSA SETTLEMENT**</u>

**I.    <u>INTRODUCTION</u>**

Named Plaintiff Natalie Morris ("Named Plaintiff"), on behalf of herself and the Opt-in Plaintiffs, Abby Studer, and Sean Hannon (collectively the "Opt-in Plaintiffs") (both the "Named Plaintiff" and the "Opt-In Plaintiffs" will hereinafter be collectively referred to as "Plaintiffs"), and Defendant Nationwide Children's Hospital ("Defendant") (Plaintiffs and Defendant will be collectively referred to as "the Parties") have reached a Settlement Agreement with respect to the above-captioned lawsuit. The settlement in principle was achieved during mediation at the Parties' scheduled Settlement Conference on July 22, 2021, at Defendant's Counsel's offices. During this mediation, the settlement was attained during extensive arm's length negotiations among the Parties conducted by experienced counsel. The settlement is memorialized in the Settlement Agreement and Release ("Settlement" or "Agreement"), attached as **Ex. 1**. The Agreement sets forth, among other terms, the identity of the Plaintiffs—Natalie Morris, Abby Studer, and Sean Hannon—and the amount to be paid to them and their Counsel by Defendant. Under the Agreement, the Parties agreed to releases of claims and dismissal of this action with prejudice upon approval of this Motion by the Court and the Parties' full performance of their obligations set forth in the Agreement.

**II.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

Named Plaintiff commenced this action against Defendant on June 24, 2020, alleging violations of the Fair Labor Standards Act ("FLSA"), the Ohio Wage Act, and the Ohio Prompt Pay Act ("the Ohio Acts"). ECF No. 1. After the Complaint filing, the Opt-In Plaintiffs filed their consents to join the lawsuit. *See* ECF No. 2 at PAGEID #20-21. Defendant then filed its

Answer to Plaintiffs' Complaint on July 23, 2020. ECF No. 32. In its Answer, Defendant denied these allegations and asserted multiple affirmative defenses. *Id*.

Shortly thereafter, on August 13, 2020, Plaintiffs filed their Motion for Conditional Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b). ECF No. 13. After fully briefing this matter before the Court, the Court subsequently granted Plaintiffs' Motion for Conditional Certification while ordering the Parties to meet and confer regarding the Notice to Potential Opt-In Plaintiffs. ECF No. 24. In response, the Parties jointly submitted a proposed notice to potential plaintiffs and a proposed opt-in consent form which the Court effectively granted.[1] ECF No. 27. In the following weeks, no viable members of the putative Opt-In class returned a consent form to Plaintiffs' Counsel evidencing their intent and desire to join this litigation.

In a Notice sent on April 20, 2021, the Clerk of Court for the United States District Court for the Southern District of Ohio informed the Parties that they should "confer concerning the readiness of their case for a settlement conference." ECF No. 29 at PAGEID #290. In turn, and with the assistance of the Court-appointed mediator, Richard N. Coglianese, the Parties agreed upon a mediation date for settlement purposes set for July 22, 2021.

Consequently, the Parties—through their respective and experienced attorneys—engaged in arm's-length negotiations in an effort to resolve this matter during the aforementioned mediation. While the matter was not completely resolved by the close of the July 22, 2021, mediation, the Parties continued to negotiate during the following weeks as they both believed to be close to a resolution of this action. The Parties ultimately succeeded in their negotiations,

---

[1] Within its Order granting the Parties' proposed Notice and Consent Forms, the Court approved the Notice and Consent Forms, but modified the documents to replace the text "JUDGE SHARON D. MORRISON" with "JUDGE SARAH D. MORRISON." ECF No. 27.

collaboratively drafted the Settlement Agreement before this Court, and executed the Settlement Agreement. If approved by this Court, the Agreement will resolve this matter in its entirety.

## III.  SUMMARY OF SETTLEMENT TERMS

### a.  The Terms Pertaining to Compensation and the Release of Claims are Reasonable and Should be Approved.

The proposed Settlement obligates Defendant to pay Fifty-Three Thousand and Six Dollars and Forty Cents $53,006.40 to settle Plaintiffs' claims in this action ("Gross Settlement Amount"). *See* **Ex. 1**, at ¶5. The Gross Settlement Amount covers all wage and hour claims, including claims for attorneys' fees and costs. The Settlement provides for up to Twenty-Eight Thousand Seven Hundred and Twenty-Seven dollars and 21/100 ($28,727.21) for payment of attorneys' fees and repayment of litigation costs incurred by Plaintiffs' Counsel. *See* **Ex. 1**, at ¶5(g).

In exchange for these payments and the other consideration detailed in the Agreement, Plaintiffs will release Defendant and its related entities and individuals from the following, as defined in the Agreement, which is an integrated document that speaks for itself, and is not modified in any way hereby: all lawsuits, claims, demands, and any other types of actions for unpaid wages, overtime, failure to pay timely wages, retaliation, and other compensation, fees/costs, liquidated damages, interest, penalties, benefits, injunctive relief, declaratory relief, equitable relief, and all other relief under the FLSA, the Ohio Acts, and all other federal, state, and local wage/hour and wage payment laws and common law theories arising or accruing prior to the date of the Order granting final approval of the Settlement Agreement that Plaintiffs have or may have, whether known or unknown.

  **b. The Settlement Administration and Distribution Provisions are Fair and Reasonable and Should be Approved.**

Under the Agreement's terms, Defendant will have twenty (20) business days after the Approval Order to make payments totaling $24,279.19 to Plaintiffs and a payment totaling $28,727.21 to Plaintiffs' Counsel for attorneys' fees and costs. *See* **Ex. 1**, at ¶5(a) – (g).

## IV. <u>THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT</u>

Where the litigation arises from a private enforcement action under Section 216(b) of the FLSA, the standard for approval of a settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation, and where it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)); *Graybill v. Petta Enters., LLC*, No. 2:17-cv-418, 2018 WL 4573289, at *4, *adopted* 2018 WL 4963569 (Oct. 15, 2018) (noting that "a district court may be satisfied that the parties are not … negotiating around FLSA requirements where there is a 'bona fide dispute under the FLSA,' citing *Kritzer v. Safelite Solutions, LLC*, No. 10Civ. 0729, 2012 WL 1945144, at *5-8 (S.D. Ohio May 30, 2012)); *Dillworth v. Case Farms Processing, Inc.*, No. 05 Civ. 1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010) (recognizing that the courts ensure plaintiffs are not abandoning FLSA rights by determining a bona fide dispute exists); *Schneider v. Goodyear Tire & Rubber Co.*, No. 13 Civ. 2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2014) (recognizing that the existence of a bona fide dispute serves as a guarantee the parties have not manipulated the process to avoid FLSA obligations).

The Court should thus perform two inquiries before approving an FLSA settlement. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second,

the Court must be satisfied that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the Parties. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicium of fairness. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement to promote the policy of encouraging settlement of litigation. *Id.*; *see also Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (approving settlement upon finding it was reasonable and brought resolution to a matter contested for a number of years); *Swigart v. Fifth Third Bank*, No. 1:11-CV-00088, 2014 WL 12654902, at *1 (S.D. Ohio Feb. 19, 2014) ("The Court further finds that the settlement reflects a reasonable compromise over contested issues under the FLSA, including but not limited to whether Defendants properly classified Plaintiffs as exempt and Defendants' good faith defense."); *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06 Civ. 299, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008).

Based on the vigorously contested nature of this litigation over an extended period of time, and the recovery achieved, this Settlement is a reasonable resolution of a *bona fide* dispute in contested litigation. The Parties have entered into their Settlement Agreement as a compromise to avoid the risks, distractions, and costs that will result from further litigation.

### a.   The Proposed Settlement is the Product of Contested Litigation.

The Parties' Settlement is a result of contested litigation. This action has been pending for more than one (1) year and was resolved only through hard-fought settlement negotiations. The Parties have fully analyzed the pertinent factual and legal issues in this case, as well as having assessed the strengths and weaknesses of the claims and defenses at issue. These facts are sufficient to establish a "contested" litigation. *See Simmons v. Mathis Tire & Auto Serv.*, No. 13-

2875-STA-tmp, 2015 U.S. Dist. LEXIS 114008, at *2 (W.D. Tenn. Aug. 20, 2015) ("Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes concerning a plaintiff's entitlement to compensation under the FLSA.").

> **b. The Proposed Settlement Reflects a Fair and Reasonable Resolution of a Bona Fide Dispute Between the Parties.**

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue concerns the existence of a *bona fide* dispute between the Parties, and the second issue addresses the fairness and reasonableness of the proposed settlement. Both issues implicated by this second prong of the Court's settlement approval inquiry are also satisfied.

> **i. A *Bona Fide* Dispute Between the Parties Existed Over Liability.**

The Settlement resolves a *bona fide* dispute between the Parties. Plaintiffs contend that Defendant violated the FLSA and the Ohio Acts. The alleged violations include:

  1) failure to pay overtime under the FLSA; and

  2) failure to pay wages timely in accordance with the Ohio Acts.

Defendant denied virtually all of Plaintiffs' allegations, contested these claims vigorously, and asserted multiple defenses and affirmative defenses. *See* ECF No. 9.

Further, as detailed below, this action was settled after nearly thirteen (13) months of litigation, following extensive work by the Parties and their Counsel. Prior to the filing of this action, Plaintiffs' Counsel performed extensive research and investigation regarding Defendant's pay practices, potential liability, potential settlement, and whether Defendant had acted in good faith (or willfully) in its pay practices; successfully certified a class and conducted a notice procedure. *See,* Declaration of Robert E. DeRose, Esq., attached as **Exhibit 3** ("**Ex. 3**") at ¶6.[2] The Parties fought to resolve various complex, disputed issues, such as whether Plaintiffs were

---

[2] Only the Named Plaintiff and two (2) opt-ins joined the case.

similarly situated to other Psychometricians in light of the other Psychometricians receiving settlement payments by the U.S. Department of Labor ("DOL") and the number of hours Plaintiffs worked each week, among others. Absent settlement, extensive work remains for both sides, including written discovery, depositions, dispositive motions, and pre-trial filings regarding the applicability of the FLSA and the Ohio Acts, as well as the issues of good faith and willfulness. This significant and outstanding body of work also includes trial on the merits and potential appellate issues. Accordingly, the Parties engaged in significant work, recognized, and appreciated the risks in proceeding if this case was not settled, and recognized that this Settlement represented a compromise of the range and uncertainty of the alleged damages.

Finally, Plaintiffs and Plaintiffs' Counsel believe that this Settlement is in the best interest of the Plaintiffs. *See*, **Ex. 3 at ¶13**. The Parties disputed whether there were any violations of the FLSA and the Ohio Acts. If the matter is not resolved by settlement, there remains a risk that the ultimate trier of fact reaches a defense verdict, in which Plaintiffs would receive nothing. While Plaintiffs feel strongly about the veracity of their allegations, absent settlement, Defendant intends to deny Plaintiffs' allegations continuously and vigorously during and after additional and complex discovery.[3] This process would have been time-consuming and expensive for all Parties. Moreover, it could reasonably be months, if not years, before Plaintiffs receive any monetary relief absent the approval of the negotiated Settlement Agreement before the Court.

---

[3] Throughout this litigation, Defendant vehemently denied having violated the FLSA and the Ohio Wage Acts or other law, and vigorously defended their position, further demonstrating a *bona fide* dispute between the Parties. *See, e.g., Graybill*, 2018 WL 4573289, at *4 (finding a *bona fide* dispute existed for purposes of FLSA settlement where Defendants denied allegations that it violated the FLSA and provided declarations in support of its position); *Lackie v. U.S. Wells Servs*., No. 2;15-cv-0695, 2017 WL 784815, adopted, 2017 WL 951479 (S.D. Ohio Mar. 10, 2017) (approving FLSA settlement where the issues "were hotly contested" as evidenced by the "extensive motion practice and briefing"); *Swartz v. D-J Eng'g. Inc.*, 2016 WL 633872, 2016 U.S. Dist. LEXIS 20017 (D. Kan. Feb. 17, 2016).

### ii.  The Proposed Settlement is Fair and Reasonable.

The settlement amount is reasonable considering the considerable risk that Plaintiffs faced. "The Sixth Circuit has identified seven factors that should aid a court in its determination of whether a class action settlement is fair, reasonable and adequate: 1) the risk of fraud or collusion; 2) the complexity, extent and likely duration of the litigation; 3) the amount of discovery engaged in by the parties; 4) the likelihood of success on the merits; 5) the opinions of class counsel and class representatives; 6) the reaction of absent class members; and 7) the public interest. *Combs v. TruGreen Ltd. P'ship*, No. 1:08-CV-489, 2010 WL 1163094, at *5 (S.D. Ohio Sept. 2, 2010) (citing *UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). Other factors are considered in determining whether the settlement of FLSA claims is "fair and reasonable." *Id.* The court may choose to consider only certain factors that are relevant to the settlement at hand and may choose to weigh factors according to the demands of the case. *Id.* In certain cases, a court may consider each factor individually. *Id.* "More often, however, inquiry into one factor necessarily overlaps with inquiry into another." *Id.* (internal citations omitted); *Kunkle v. Q-Mark, Inc.*, No. 3:13-CV-82, 2013 WL 6913250, at *1 (S.D. Ohio Dec. 30, 2013) (noting that courts apply the above seven factors when determining whether a proposed FLSA settlement is fair and reasonable.). Each of these factors favor settlement. Accordingly, the settlement proceeds and terms are fair, reasonable, and adequate.

### 1.  There is No Evidence of Fraud or Collusion.

Here, the Settlement was product of arms' length negotiations at mediation between experienced wage and hour counsel. The Settlement was reached after the Parties engaged in formal and informal discovery and after partaking in an all-day mediation. *See Dillworth*, 2010 WL 776933, at *6 (approving settlement that was reached after the parties engaged in "arms-

length negotiation, following extensive investigation and discovery."); *Ford v. Carnegie Mgmt. Servs., Inc.*, No. 2:16-CV-18, 2017 WL 4390294, at *2 (S.D. Ohio Oct. 3, 2017) ("The parties' divergent positions would have required judicial resolution had a settlement not been reached through many months of arms-length negotiation between competent counsel. Thus, the settlement is free from indicia of fraud and collusion.").

### 2. The Complexity, Expense and Likely Duration of the Litigation.

As outlined above, the Parties disagree about the merits of Plaintiffs' claims and the viability of Defendant's defenses. If the litigation had continued, the Parties would have faced obstacles and uncertainties, including the outcome of complex discovery disputes, a potential for summary judgment, and potentially a trial on the merits. *Dillworth*, 2010 WL 776933, at *6 (noting that "given the factual and legal complexity of the case, there is no guarantee that Plaintiff would prevail at trial. In contrast, the Settlement Agreement assures that Plaintiff will receive substantial compensation for time spent in the disputed activities.").

Accordingly, the remaining duration of this case would be significant; yet, Plaintiffs' recovery of damages, if any, is far from certain. With the Parties' settlement, Plaintiffs will receive concrete (and significant) relief, while Defendant will avoid the continued expense of litigation and the relative peace-of-mind guaranteed by Plaintiffs' release of claims.

### 3. The Amount of Discovery to be Engaged in by the Parties.

In addition to the formal discovery the Parties exchanged pursuant to Federal Rule of Civil Procedure 26, the Parties also engaged in informal discovery wherein Defendant provided Plaintiffs with all relevant records necessary for the completion of a comprehensive damage model. This discovery provided the Parties with more than "adequate information in order to evaluate the relative positions of the parties." *Graybill*, 2018 WL 4573289, at *5. Plaintiffs'

Counsel conducted an exhaustive review of the payroll and time data for Plaintiffs. Further, Plaintiffs' Counsel has comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Settlement. *See Kritzer,* 2012 WL 1945144, at *7.

### 4. The Likelihood of Success on the Merits.

As articulated supra at Part IV(b)(i), Plaintiffs alleged various types of overtime violations and alleged failure to pay wages in a timely manner pursuant to the FLSA and the Ohio Acts. To summarize, Plaintiffs alleged that they often worked much more than forty (40) hours a week and were not paid overtime as required by the FLSA and the Ohio Acts. Defendant vigorously denied these allegations—specifically, Defendant maintains that Plaintiffs were appropriately classified as exempt and even if they were not, Plaintiffs either: (a) did not work more than 40 hours per week; or (b) were appropriately compensated by checks disbursed by the DOL for any alleged misclassification. Given the procedural posture of the case, Plaintiffs believe the probability of success is high on their alleged wage claims. Defendant completely disagrees and vehemently denies these allegations.

Defendant asserted numerous factual and affirmative defenses through its pleadings. Defendant claimed that Plaintiffs were given all the compensation they were entitled to, that the checks disbursed by the DOL were sufficient in compensating Plaintiffs for any alleged violations they may have suffered if misclassified as exempt employees, and that the Plaintiffs were not due any more back pay or damages under the FLSA or the Ohio Acts as asserted in the Complaint. Defendant also alleged that Plaintiffs' claims were barred, in whole or in part, by the doctrines of payment, waiver, release, estoppel, and/or accord and satisfaction, that their claims

were barred under the statute of limitations, and that their claims were barred to the extent that they were encompassed by executed WH-58 forms.

The Parties believed they were correct in their respective analyses of the law and that their views of the facts would support their positions either in summary judgment or at trial. Given their polarized positions, the Parties were heading toward protracted and expensive litigation. The negotiated resolution, amidst the COVID-19 pandemic, was in the interest of both Parties because only one Party would ultimately prevail.

### 5. The Opinion of Plaintiffs and Plaintiffs' Counsel.

Based on Plaintiffs' Counsel's knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour lawsuits throughout the United States, Plaintiffs' Counsel believes that the Settlement constitutes a fair and reasonable result for all Parties. *See,* **Ex. 3 at ¶13**. The results in this matter provided an exceptional recovery for the Plaintiffs. Plaintiff Morris will receive 100% of her unliquidated damages during the relevant time period, $7,822.39; and Ohio and federal liquidated damages of $2,424.94 (FLSA, $1,955.60 and $469.34 OPPA). *See* **Ex. 1**, at ¶5(a) and (b). Plaintiff Hannon will receive 100% of his unliquidated damages during the relevant time period, $7,489.29; and Ohio and federal liquidated damages of $2,321.68 (FLSA, $1,872.32 and $449.36 OPPA). *See* **Ex. 1**, at ¶5(c) and (d). Plaintiff Studer will receive 100% of her unliquidated damages during the relevant time period, $3,216.70; and Ohio and federal liquidated damages of $1,004.18 (FLSA, $804.18 and $200.00 OPPA). *See* **Ex. 1**, at ¶5(e) and (f).

The Plaintiffs joined this lawsuit after receiving a settlement offer negotiated by the DOL. Under the DOL settlement, Plaintiff Morris would have received $4.056.25 (*See*, Morris DOL Letter, attached as **Exhibit 4**), Plaintiff Hannon would have received $4,100.76 (*See*,

Hannon DOL Letter, attached as **Exhibit 5**) and Plaintiff Studer would have received $590.29 (*See*, Studer DOL Letter, attached as **Exhibit 6**).   The instant settlement is 1.5 times better ($6,191.08) for Plaintiff Morris, 1.40 times better ($5,710.21) for Plaintiff Hannon and 6.15 times ($3,630.59) better for Plaintiff Studer.   This fact further supports approval of the Settlement. *See*, *Graybill*, 2018 WL 4573289, at *6 ("The Court gives deference to [counsel's] experienced opinion that the Settlement Agreement should be approved.") (*citing Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)); *Isby v. Bayh,* 75 F. 3d 1191, 1200 (7th Cir. 1996) ("[T]he district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate."). Additionally, the Plaintiffs approved the terms of the Settlement as evidenced by their signature on the Agreement. Considering the foregoing, the Court should approve the Parties' proposed Settlements of this Action.

### 6.   The Reaction of Absent Class Members.

The Parties have reached a proposed settlement of Plaintiffs' alleged FLSA and Ohio Acts claims to resolve this action. This factor is not relevant as this is not a class action and is, therefore, neutral. *Murton v. Measurecomp., LLC,* No. 1:07CV3127, 2009 WL 10715595, at *7 (N.D. Ohio Aug. 10, 2009); *Combs*, 2010 WL 11636094, at *5 (noting that the court may consider only those of the seven factors that are relevant to the case).

### 7.   Public Interest in the Settlement.

Because this Settlement (1) resolves what would be further protracted litigation, (2) provides finality (and certainty) to the Parties; and (3) preserves judicial resources, it promotes the public interest. *See Gentrup v. Renovo Servs*., LLC, No. 1:07CV430, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011) , at *3 ("Given the uncertainties surrounding the possible trial in

this matter, the certainty and finality that come with settlement also weigh in favor of a ruling approving the settlement. Such a ruling promotes the public interest in encouraging the settlement of litigation.").

## V.   PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND LITIGATION EXPENSES SHOULD BE APPROVED

The FLSA has a fee-shifting provision that provides that the prevailing party shall recover reasonable attorneys' fees and litigation costs. 29 U.S.C. § 216(b) (a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."); see also O.R.C. § 4111.10(A) (liability includes paying "costs and reasonable attorney's fees as may be allowed by the court"). *See also, Rembert v. A Plus Home Health Care Agency, et al*., Case No. 20-3454 ECF 39-2 at *3 (6th Cir. Jan. 25, 2021) and *Cruz v. Vel-A-Da, Inc*. Case No. 3:90CV7087, 1993 WL 659253, *3 (N.D. Ohio May 14, 1993) ("[a]n award of attorneys' fees under the FLSA is mandatory, with the amount of fees within the discretion of the court.") (Citations omitted). "A reasonable fee is 'adequately compensatory to attract competent counsel' but "avoids producing a windfall for lawyers.'" *Rembert* at 3-4, quoting, *Geier v. Sundquist*, 372 F.3d. 784, 791 (6ht Cir 2004). There are two basic measures for evaluating the fairness of an attorney's award under the FLSA— "work done and results achieved." *Rui He v. Rom*, 751 Fed. App'x. 664, 673 (6th Cir. 2018) (quoting *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016)). The "work done" measure is the "lodestar" method of attorney fee calculation and the "results achieved" measure is the "percentage of the fund" method of attorney fee calculation. *Gascho v. Global Fitness Holdings*, LLC, 822 F.3d at 279. The Sixth Circuit permits a court to choose the one or the other method as the court, in its discretion, deems appropriate for the circumstances of a particular case so long as the court articulates its reasons. *See, Moulton v. U.S. Steel Corp*., 581

16

F.3d 344, 352 (6th Cir. 2009). The lodestar method yields a fee that is presumptively sufficient to achieve the objective of attracting competent counsel but avoiding a windfall for the attorneys. *See, Rembert* at *4, quoting, *Perdue v. Kenny A*., 559 U.S. 542, 552 (2010).

After the Court has confirmed that the terms of settlement are fair to Plaintiff, it may review the Parties' Agreement as to the provision of fees and costs to Plaintiff's Counsel. The Settlement Agreement reflects Defendant's agreement to pay Plaintiffs' Counsel $28,727.21 in attorneys' fees and costs. This amount represents the payment pursuant to 29 U.S.C. § 216(b) for the amount of time and expense that Plaintiffs' Counsel has dedicated to this case and the extensive experience Plaintiff's Counsel has in FLSA actions. Defendant has agreed to pay these fees and costs as part of the negotiated Agreement. All claimed fees and costs were incurred during the course of the litigation of this Action or will be incurred during the administration of the Settlement. *See* **Ex. 1**, at ¶5(g). The requested $28,727.21 in attorneys' fees and costs represent the attorney fees and costs as of the date of the mediation, and do not include work done after that date. **Ex. 3**, **at ¶¶7-8**. As of this Motion, the amount of attorney fees is $37,780.50 and Plaintiffs' Counsel anticipates incurring an additional $2,000.00 in fees before this matter is concluded. **Ex. 3**, **at ¶11.** Therefore, the requested lodestar represents a $11,518.50 reduction or 59.24% of the actual lodestar. **Ex. 3**, **at ¶11.**

Another important factor for the Court to consider, is that Plaintiffs' Counsel took this case on a contingency basis, meaning that if there was no recovery, the Plaintiffs did not owe counsel any fee for the services provided. **Ex. 3, at ¶10**. Further, Plaintiffs' Counsel stated in its contract for services that it would seek to recover its attorney fees and costs from the employer pursuant to 29 U.S.C. § 216 (b) instead of taking any portion of the client's awards. **Ex. 3, at ¶10.** During the mediation, Plaintiffs' Counsel sought to not take any part of the

Plaintiffs' awards and, instead, only recover the cost of his attorney's fees and expenses via the Settlement Agreement, which Defendant agreed to. *See* Declaration of Mediator Richard N. Coglianese, attached as **Exhibit 7** ("**Ex. 7**") at ¶¶5-6. Courts generally look with favor upon Plaintiff's Counsels' request for an attorney fee award when they undertake the case on a contingency basis and "absorb[] the risk of an unsuccessful outcome and no fee of any kind." *Herbert et al.,* at *9, *citing Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *30. Plaintiffs' Counsel seeks to have its payment of attorney's fees by Defendant, as set forth in the Settlement Agreement, granted to cover the work performed to achieve the great result for the Plaintiffs and for litigation expenses and these facts warrant approval of the requested fee amount of $28,727.21 for fees and expenses.

## VI.   <u>CONCLUSION</u>

The Parties reached this Settlement as the result of contested litigation, and it resolves a *bona fide* dispute.  The Parties engaged in lengthy negotiations at mediation, analyzed all pertinent information, and resolved the issues between them with the assistance of an experienced mediator. The Settlement is eminently fair, reasonable, and adequate, and provides Plaintiffs with significant monetary relief in a contested matter. Finally, the Settlement fulfills the relevant criteria within this Circuit's seven-factor test.  For these reasons, the Court should approve the Parties' Agreement.

Dated: September 10, 2021.                                           Respectfully Submitted,


*/s/Robert E. DeRose*                                           */s/ James G. Petrie*
Robert E. DeRose (0055214)                          James G. Petrie (0059446)
**BARKAN MEIZLISH DEROSE**                      Jill K. Bigler (0083789)
**WENTZ MCINERNEY PEIFER, LLP**          Epstein Becker & Green, P.C.

4200 Regent Street, Suite 210                    375 North Front Street, Suite 325
Columbus, Ohio 43219                             Columbus, Ohio 43215-4291
Tel: (614) 221-4221                              Phone: (614) 872-2500
Fax: (614) 744-2300                              Fax: (614) 633-1713
bderose@barkanmeizlish.com                       jpetrie@ebglaw.com
                                                 jbigler@ebglaw.com
*Counsel for Plaintiffs*

                                                 *Counsel for Defendant,*
                                                 *Nationwide Children's Hospital*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing has been electronically filed this 10th day of September 2021, through the Court's CM/ECF system. Notice of filing will be automatically sent to all counsel (and their designees) who have entered their appearance of record and who are registered with this Court's CM/ECF system.

                                                 */s/Robert E. DeRose*
                                                 Robert E. DeRose