# Exhibit 1

# SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and Release ("Agreement") is entered into among Nationwide Children's Hospital ("NCH") and Natalie Morris, Sean Hannon, and Abby Studer ("Plaintiffs") (collectively, the "Parties").

## RECITALS

WHEREAS, on June 24, 2020, Natalie Morris filed a Collective and Class Action Complaint in a lawsuit captioned *Morris, et al. v. Nationwide Children's Hospital*, Case No. 2:20-cv-03194 (S.D. Ohio) (hereafter, the "Lawsuit") alleging wage and hour claims under the Fair Labor Standards Act ("FLSA"), the Ohio Fair Minimum Wage Standards Act ("OFMWSA"), and the Ohio Prompt Pay Act ("OPPA") (collectively, the "Wage Claims");

WHEREAS, NCH denies any liability or wrongdoing of any kind;

WHEREAS, in consideration of the risk and expense of litigation, the Parties have agreed to compromise their respective positions by entering into this Agreement;

WHEREAS, by this Agreement, the Parties intend to resolve, with complete and utter finality, all Wage Claims in the Lawsuit, asserted and/or unasserted, between the Parties based upon the Parties' conduct through the date of this Agreement;

WHEREAS, the Parties intend to submit the settlement terms embodied in this Agreement to the United States District Court for the Southern District of Ohio, Eastern Division, for approval of the settlement, including its fairness and reasonableness; and

WHEREAS, the Parties understand and agree that if this Court does not approve the settlement and find it to be fair and reasonable, that this Agreement shall be null and void and of no effect whatsoever.

NOW, THEREFORE, in consideration of the mutual agreements set forth herein, the Parties agree as follows:

1. <u>Court Approval of Settlement</u>. This Agreement reflects settlement terms agreed upon by all Parties with the advice of their legal counsel. However, all Parties and counsel understand that this Agreement shall only be biding and effective if it is approved by the Court in which the Lawsuit is pending, and if such Court holds that the terms of such Agreement are fair and reasonable. Within 15 business days following execution of this Agreement by the Plaintiffs and NCH, counsel for the Parties agree to submit this Agreement to the Court along with a request for approval of the settlement terms set forth in the Agreement. If the Court declines to approve all the settlement terms in this Agreement and/or declines to find some or all such terms to be fair and reasonable, then this Agreement shall be null and void.



16882859v2

2. <u>Release</u>. Except as set forth below, Plaintiffs, on behalf of themselves and their agents, representatives, heirs, successors, assigns and attorneys, hereby unconditionally release, acquit, and forever discharge any right or claim, known or unknown, that Plaintiffs may have related to the Lawsuit and/or the Wage Claims that were brought or could have been brought in the Lawsuit filed against NCH or its current or former parents, affiliates, subsidiaries, predecessors, successors, assigns, officers, directors, members, Plaintiffs, agents, insurers, attorneys or representatives (collectively "Releasees"), on or at any time prior to the date Plaintiffs execute this Agreement. The release set forth herein is not intended to waive or release any right or claim that may arise: (a) from events occurring after Plaintiffs execute this Agreement; (b) any right Plaintiffs have to a vested benefit under any welfare, benefit, or retirement plan sponsored by NCH, subject to the terms of the applicable plan and as may be amended from time-to-time by NCH in accordance with applicable law; or (c) from any right, which by express terms of law, may not, under any circumstances, be waived, released, or extinguished. Plaintiffs understand that this release does not prohibit Plaintiffs from filing an administrative charge with the EEOC or Ohio Civil Rights Commission. However, by signing this Agreement, Plaintiffs will have waived any right that Plaintiffs had to bring a lawsuit or obtain a recovery if an administrative agency pursues a claim against NCH or any of the other Releasees based on any actions taken by NCH or any of the other Releasees up to the date of the signing of this Agreement.

3. <u>Waiver</u>. Plaintiffs agree that this is a knowing and voluntary waiver of all waivable claims under federal and Ohio wage statutes for damages which exist as of the date Plaintiffs execute this Agreement, but of which Plaintiffs do not now know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect Plaintiffs' decision to enter into this Agreement. Plaintiffs further accept the benefits conferred to Plaintiffs in Paragraph 5 of this Agreement as a complete compromise of matters involving disputed issues of law and fact, and Plaintiffs have assumed the risk that the facts and law may be other than Plaintiffs believe.

4. <u>Plaintiffs' Representations</u>. Plaintiffs represent and agree that: (a) other than the Lawsuit, Plaintiffs have not filed any complaints or charges against NCH or any of the other Releasees with any federal, state, or local agency or court; (b) Plaintiffs have not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, any right to assert any claim against NCH or any of the Releasees; and (c) Plaintiffs have not suffered any work-related injuries while employed at NCH prior to the execution of this Agreement.

5. <u>Consideration</u>. In consideration for Plaintiffs timely signing this Agreement and agreeing to the commitments herein, NCH agrees to pay Plaintiffs the total gross amount of Fifty-Three Thousand and Six Dollars and Forty Cents ($53,006.40) ("Gross Settlement Amount"). The Gross Settlement Amount includes all amounts to be paid by NCH under this Agreement, including, without limitation, settlement payments to Plaintiffs, attorneys' fees, litigation costs, and employer taxes on the settlement payments. The Gross Settlement Amount is the maximum amount that NCH is obligated to pay under this Agreement. In no event shall NCH be required to pay more than the Gross Settlement Amount in complete satisfaction of all its obligations under this Agreement. The Gross Settlement Amount shall be paid as follows:

(a) One check made payable to **Natalie Morris** for alleged lost wages in the gross amount of Seven Thousand Eight Hundred Twenty-Two Dollars and Thirty-Nine Cents ($7,822.39), such payment subject to all applicable legal deductions and withholdings on the date of payment, and for which an IRS Form W-2 shall be issued to Morris;

(b) One check made payable to **Natalie Morris** for alleged liquidated damages in the amount of Two Thousand Four Hundred Twenty-Four Dollars and Ninety-Four Cents ($2,424.94), for which an IRS Form 1099 shall be issued to Morris;

(c) One check made payable to **Sean Hannon** for alleged lost wages in the gross amount of Seven Thousand Four Hundred Eighty-Nine Dollars and Twenty-Nine Cents ($7,489.29), such payment subject to all applicable legal deductions and withholdings on the date of payment, and for which an IRS Form W-2 shall be issued to Hannon;

(d) One check made payable to **Sean Hannon** for alleged liquidated damages in the amount of Two Thousand Three Hundred Twenty-One Dollars and Sixty-Eight Cents ($2,321.68), for which an IRS Form 1099 shall be issued to Hannon;

(e) One check made payable to **Abby Studer** for alleged lost wages in the gross amount of Three Thousand Two Hundred Sixteen Dollars and Seventy Cents ($3,216.70), such payment subject to all applicable legal deductions and withholdings on the date of payment, and for which an IRS Form W-2 shall be issued to Studer;

(f) One check made payable to **Abby Studer** for alleged liquidated damages in the amount of One Thousand and Four Dollars and Eighteen Cents ($1,004.18), for which an IRS Form 1099 shall be issued to Studer; and

(g) One check made payable to **Barkan Meizlish DeRose Wentz McInerney Peifer, LLP** for attorney fees and costs in the amount of Twenty-Eight Thousand Seven Hundred Twenty-Seven Dollars and Twenty-One Cents ($28,727.21), for which an IRS Form 1099 shall be issued to both Plaintiffs and Plaintiffs' counsel. NCH agrees not to oppose a request by Plaintiffs' counsel for reasonable attorneys' fees and litigation costs, not to exceed the amount set forth in this Subparagraph 5(g). Plaintiffs' counsel agrees that they will not seek attorneys' fees and reimbursement of litigation costs in excess of this amount. Plaintiffs' counsel's attorneys' fees and litigation costs shall be paid solely from the Gross Settlement Amount. In the event the Court approves lesser amounts for either attorneys' fees or litigation costs, any such reduction will not affect the remaining terms of the Agreement approved by the Court and such approved terms will remain fully enforceable. The award of attorneys' fees and costs shall be inclusive of all attorneys' fees and costs of all Plaintiffs in the Lawsuit. Plaintiffs' counsel waives all claims to any further attorneys' fees, costs, and expenses in connection with the Lawsuit. No fees or costs sought or recovered in connection with the Lawsuit and/or this Agreement may be

3  

sought or recovered in any other action. Except as otherwise provided herein, the Parties shall bear responsibility for their own fees, costs, and expenses arising from the Lawsuit.

NCH will provide the checks referenced in Paragraph 5 to Plaintiffs' legal counsel within 20 business days after this Court's filing of an Order approving the fairness and reasonableness. The payments in Paragraph 5 shall not be eligible for any of NCH's retirement savings plans. Plaintiffs agree that the Gross Settlement Amount represents any and all back pay, severance pay, wages (whether overtime or otherwise), bonuses, vacation pay, front pay, damages (whether liquidated, compensatory, exemplary, punitive, or otherwise), benefits, attorneys' fees, costs, interest, or other monies to which Plaintiffs may have been entitled to receive or recover in connection with Plaintiffs' employment with NCH. Plaintiffs agree that this is valuable consideration which NCH is not otherwise required to provide.

6. <u>Tax Consequences</u>. Plaintiffs agree that Plaintiffs are solely and legally responsible to pay any and all applicable income taxes on the payments to Plaintiffs or on Plaintiffs' behalf under Paragraph 5 of this Agreement. Plaintiffs further agree to indemnify and hold harmless NCH and all other Releasees from any claim or liability for any taxes, penalties, or interest for which Plaintiffs are responsible as a result of the payments made to Plaintiffs or on Plaintiffs' behalves pursuant to Paragraph 5 of this Agreement.

7. <u>Dismissal of the Lawsuit With Prejudice</u>. Within 5 business days after NCH's payment of the payments set forth in Paragraph 5, Plaintiffs' counsel shall dismiss the Lawsuit with prejudice by filing the Stipulated Dismissal with Prejudice in the form attached hereto as **Exhibit A**.

8. <u>No Future Lawsuits</u>. Except as otherwise provided in Paragraph 2, Plaintiffs agree not to knowingly, directly or indirectly, institute, solicit, encourage, advise, or participate in the commencement and/or prosecution of any lawsuit, administrative complaint, demand, action, or otherwise assert any claims against NCH or any of the Releasees referenced in Paragraph 2 of this Agreement for acts or omissions taken or made prior to the execution of this Agreement.

9. <u>Additional Representations</u>. Plaintiffs represent and agree that, prior to executing this Agreement, Plaintiffs have been afforded a reasonable amount of time to review this Agreement, to understand its contents, to knowingly and voluntarily enter into this Agreement, and to be bound by its specific, stated obligations and have been and are being advised to consult with an attorney.

10. <u>Sufficiency of Consideration</u>. The preceding paragraphs provide Plaintiffs due consideration for the promises that Plaintiffs are being asked to enter into in this Agreement. Plaintiffs' signature at the conclusion of this document signifies Plaintiffs' complete agreement with the promises and with the sufficiency of this consideration for Plaintiffs' and NCH's mutual obligations contained in this Agreement.

11. <u>Non-Admission</u>. Plaintiffs understand that this Agreement shall not in any way be construed as an admission by NCH or any of the other Releasees of any wrongdoing whatsoever

4

16882859v2

against Plaintiffs, and NCH specifically disclaims any liability for any wrongdoing against Plaintiffs, and denies any such wrongdoing, on the part of itself or any of the other Releasees. NCH understands that this Agreement shall not in any way be construed as an admission by Plaintiffs of any wrongdoing whatsoever against NCH or any of the other Releasees and Plaintiffs specifically disclaim any liability for any wrongdoing against NCH or any of the other Releasees and denies any such wrongdoing.

12. <u>Beneficiaries</u>. This Agreement shall be binding upon NCH, Plaintiffs, and Plaintiffs' heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of the Releasees and each of them, and to their heirs, administrators, representatives, executors, successors, and assigns.

13. <u>Severability</u>. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement. The headings of the paragraphs in this Agreement are for convenience only and shall not affect its interpretation.

14. <u>Entire Agreement</u>. This Agreement sets forth the entire agreement between NCH and Plaintiffs and fully supersedes any and all prior agreements or understandings, whether written or oral, between such parties pertaining to the subject matter hereof.

15. <u>Choice of Law/Venue</u>. This Agreement shall in all respects be interpreted, enforced, and governed under the laws of the United States and the State of Ohio. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties. The parties agree that any litigation related to this Agreement shall be brought in the Court of Common Pleas of Franklin County, Ohio, or the United States District Court for the Southern District of Ohio, Eastern Division.

16. <u>Acceptance/Revocation</u>. Each Plaintiff shall have a period of 10 days from the date of delivery of this Agreement to accept this Agreement. Any such acceptance must be in writing and received by James G. Petrie, legal counsel for NCH, at Bricker & Eckler, LLP, 100 South Third Street, Columbus, Ohio, 43215 (jpetrie@bricker.com) by 4:30 P.M. EST within the applicable time period. The Agreement shall not be effective or enforceable until all parties have executed the Agreement.

17. <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one agreement. Original signatures transmitted by electronic means, such as by PDF, will be effective to create such counterparts.

18. <u>Breach and Indemnification</u>. If either Party breaches any of the terms and conditions of this Agreement, the non-breaching Party shall be entitled to reasonable attorneys' fees and expenses incurred to enforce the terms and conditions contained herein. Plaintiffs agree to indemnify and hold NCH and each and all of the other Releasees harmless from and against any and all loss, cost, damage, or expense, including, but not limited to, attorneys' fees incurred by

5  

16882859v2

NCH or the other Releasees, or any one of them, arising out of, or in any direct or indirect way related to, any breach of this Agreement by Plaintiffs or the fact that any representation made herein by Plaintiffs was false when made. This provision and the provisions of Paragraphs 19 and 20 shall not apply to any judicial or administrative action filed by Plaintiffs to the extent that such action is based upon any right which by express terms of law may not under any circumstances be waived, released or extinguished.

19. **Non-Disparagement**. Plaintiffs agree that they will not disparage NCH or any of the other Releasees and will not make any statement to any third party or on any social media website that could reasonably be foreseen to cause harm to the personal or professional reputation of NCH or any of the other Releasees. This non-disparagement clause shall not apply to statements made under oath by Plaintiffs if compelled to testify pursuant to lawful subpoena or court order, or as necessary to enforce the terms of this Agreement. NCH will instruct Eric Butter, PhD, David Michalec, PhD, and Carrie Murphy, PhD to refrain from discussing the Lawsuit or disparaging Plaintiffs for asserting legal claims against NCH.

20. **Confidentiality**. Plaintiffs shall keep the terms and facts of this Agreement completely confidential. Plaintiffs acknowledge that Plaintiffs have not disclosed, and shall not hereafter disclose, any information concerning this Agreement to anyone. It is understood that this Agreement shall be subject to exceptions for, and hence not apply to, Plaintiffs revealing the terms of this Agreement to Plaintiffs' attorneys, financial advisors, or immediate family on the same conditions of confidentiality, as otherwise required by applicable law or court order, or in order to enforce the terms of this Agreement.

21. **Non-Interference. Nothing in this Agreement is intended to or shall interfere with Plaintiffs' right to participate in a proceeding with any federal, state, or local government agency enforcing employment laws, nor shall this Agreement prohibit Plaintiffs from cooperating with any such agency in its investigation.**

### [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

*[Initials: NM, SH, AG]*

This Agreement was issued to Plaintiffs' counsel, Robert DeRose (bderose@barkanmeizlish.com) on August 16, 2021 via email by NCH's counsel, Jim Petrie (jpetrie@bricker.com).

**NATALIE MORRIS**

*Natalie Morris*     09/02/2021

Natalie Morris     Date

**SEAN HANNON**

*Sean Hannon*     09/02/2021

Sean Hannon     Date

**ABBY STUDER**

*Abby Studer*     09/02/2021

Abby Studer     Date

**NATIONWIDE CHILDREN'S HOSPITAL**

*[signature]*     9/8/2021

By:     Date

Title: Chief Human Resources Officer

7

**Exhibit A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Natalie Morris, et al., | : | Case No. 2:20-cv-03194 |
| | : | |
| Plaintiff, | : | Judge Sarah D. Morrison |
| | : | |
| v. | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| Nationwide Children's Hospital, | : | |
| | : | |
| Defendant. | : | |

**STIPULATION OF DISMISSAL WITH PREJUDICE**

Now come the parties, by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), hereby stipulate to the dismissal of all of Plaintiffs' claims asserted against Defendant in the above-captioned litigation **with prejudice** as to Plaintiff Morris, Plaintiff Studer, and Plaintiff Hannon.

| | |
|---|---|
| */s/Robert E. DeRose* | */s/ James G. Petrie* |
| Robert E. DeRose (0055214) | James G. Petrie (0059446) |
| *Trial Attorney for Plaintiffs* | *Trial Attorney* |
| **BARKAN MEIZLISH DEROSE** | Jill K. Bigler (0083789) |
| **WENTZ MCINERNEY PEIFER, LLP** | EPSTEIN, BECKER & GREEN, P.C. |
| 4200 Regent Street, Suite 210 | 375 North Front Street, Suite 325 |
| Columbus, OH 43219 | Columbus, Ohio 43215 |
| Phone: (614) 221-4221 | Telephone: (614) 872-2500 |
| Facsimile: (614) 744-2300 | Facsimile: (614) 633-1713 |
| bderose@barkanmeizlish.com | jpetrie@egblaw.com |
| **ATTORNEY FOR PLAINTIFF** | jbigler@egblaw.com |
| | **ATTORNEYS FOR DEFENDANT** |

9

# This document was signed by:

# Natalie Morris

**vinesign**

NM

| | |
|---|---|
| **Date** | 9/2/2021 10:44 AM UTC |
| **Phone** | 3306059269 |
| **IP Address** | 108.92.71.191 |
| **Confirmation** | BE5E2A4C003841B57A5406938514593D 89ECE30091EF489BA7B491DD1780C348 |

**v**

VINESIGN.COM

# This document was signed by:

## Sean Hannon

**vinesign**

*Sean Hannon*

**Date** 9/2/2021 1:26 PM UTC

**Phone** 4404877537

**IP Address** 107.126.36.56

**Confirmation** D334E567D4010FF43479AB91DD8DC8CA
04A9DA1C5974770EB60995567034E5D8

**V**

VINESIGN.COM

## This document was signed by:

## Abby Studer

*Abby Studer*

**vinesign**

**Date** 9/2/2021 1:30 PM UTC

**Phone** 7409744492

**IP Address** 174.207.36.80

**Confirmation** A5F6590DC7A7D486ADECC8D0B20283D27AEA7C1DC9342A6334F0B05D12DFD86B

**V**

**VINESIGN.COM**