UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**NATALIE MORRIS,** *et al.*,
on behalf of herself and all others
similarly situated,

       **Plaintiff,**

v.

**NATIONWIDE CHILDREN'S
HOSPITAL,**

       **Defendant.**

:

Case No. 2:20-cv-3194
Judge Sarah D. Morrison
Magistrate Judge Kimberly A. Jolson

## ORDER

Named Plaintiff Natalie Morris and Opt-In Plaintiffs Abby Studer and Sean Hannon (collectively, "Plaintiffs") and Defendant Nationwide Children's Hospital ("Defendant") have filed a motion asking the Court to approve their proposed Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and parallel state statute settlement ("Settlement"). (ECF No. 34). The motion is **GRANTED**.

**I.    BACKGROUND**

Named Plaintiff commenced this action against Defendant on June 24, 2020, alleging violations of the Fair Labor Standards Act ("FLSA") and parallel state statutes. (ECF No. 1). She later filed her Motion for Conditional Certification and Court-Authorized Notice. (ECF No. 13). After a full briefing, the Court granted the Motion for Conditional Certification while ordering the parties to meet and confer regarding the Notice to potential Opt-In Plaintiffs. (ECF No. 24). In response, the

1

parties jointly submitted a proposed Notice and Consent Form which the Court approved. (ECF No. 27).

The parties then engaged in arm's-length negotiations to resolve this matter at a mediation. (ECF No. 31). While the matter was not completely resolved by the close of the mediation, the parties continued negotiations and ultimately agreed to a settlement. (ECF No. 33). Notable terms of the proposed Settlement include:

- Defendant agrees to pay a gross settlement amount of $53,006.40 to settle Plaintiffs' claims. This amount covers all wage and hour claims, including claims for attorney's fees and costs.

- Each Plaintiff will receive 100% of alleged unpaid wages and liquidated damages.

- Plaintiffs' Counsel will receive $28,727.21 for attorney's fees and costs.

- Plaintiffs agree to release Defendant from "all lawsuits, claims, demands, and any other types of actions for unpaid wages, overtime, failure to pay timely wages, retaliation, and other compensation, fees/costs, liquidated damages, interest, penalties, benefits, injunctive relief, declaratory relief, equitable relief, and all other relief under the FLSA, the Ohio Acts, and all other federal, state, and local wage/hour and wage payment laws and common law theories arising or accruing prior to the date of the Order granting final approval of the Settlement Agreement that Plaintiffs have or may have, whether known or unknown."

(ECF No. 34–1).

## II. DISCUSSION

This case is a collective action brought and certified under 29 U.S.C. § 216(b). Court approval of any settlement is therefore necessary. *Crawford v. Lexington Fayette Urb. Cty. Gov't*, No. 06-299-JBC, 2008 WL 4724499, at *2–3 (E.D. Ky. Oct. 23, 2008); *see also* 29 U.S.C. § 216(b).

2

### A. Bona Fide Dispute

In approving a settlement agreement under § 216(b), "the Court must ensure that there is a bona fide dispute between the parties as to the employer's liability under the FLSA, lest the parties be allowed to negotiate around the FLSA's requirements concerning wages and overtime." *Kritzer v. Safelite Sols., LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012) (Frost, J.) (citation omitted). If a bona fide dispute is present, the Court can be satisfied that "the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Id.* (citation and quotation omitted).

Here, the parties' proposed Settlement resolves bona fide disputes under the FLSA. At the outset, Defendant denied all of Plaintiff's allegations and asserted multiple affirmative defenses. The parties vigorously contested each other's arguments over a thirteen (13) month litigation period. Notably, they disagree over the number of hours Plaintiffs worked each week and whether Plaintiffs were similarly situated to other Psychometricians in light of the other Psychometricians receiving settlement payments from the United States Department of Labor. (ECF No. 34, PageID 302–03). The Parties ultimately agreed to settle "as a compromise to avoid the risks, distractions, and costs that will result from further litigation." (*Id.*, PageID 301). Because of these sharp disputes, the Court concludes that the Settlement is not an attempt to "negotiate around" the FLSA's mandatory requirements for compensating unpaid wages.

3

### B. Fairness

"In reviewing a proposed FLSA settlement, 'a court must scrutinize the proposed settlement for fairness and determine whether the settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Chime v. Fam. Life Counseling & Psychiatric Servs.*, No. 1:19–CV–2513, 2020 WL 6746511, at *3 (N.D. Ohio Nov. 17, 2020) (citing *Snook v. Valley OB-GYN Clinic, P.C.*, No. 14-CV-12302, 2014 WL 7369904, at *2 (E.D. Mich. Dec. 29, 2014)). Put differently, "district courts must evaluate FLSA settlements for fairness, and must not simply rubber-stamp them as approved." *Murrell v. Transamerica Agency Network, Inc.*, No. 2:20-CV-2559, 2021 WL 128609, at *1 (S.D. Ohio Jan. 14, 2021) (Jolson, M.J.) (citation and quotation omitted).

> In determining fairness, six factors matter:
>
> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.

*Id.* (citations omitted). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Gentrup v. Renovo Servs., LLC*, No. 1:07–CV–430, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011) (Black, J.).

Here, neither fraud nor collusion are present. The Settlement was reached via arm's-length negotiations among experienced opposing counsel. Additionally, the complexity, expense, and likely duration of the litigation favor the Settlement.

4

The parties disagree as to the merits of the case; thus, continued litigation would be both costly and lengthy. Prior to reaching the Settlement, counsel had access to discovery sufficient to adequately assess the likelihood of success and the risks involved in continued litigation. Plaintiffs' probability of success is uncertain. Both parties believe themselves to be fully correct and conclude that "[t]he negotiated resolution… was in the interest of both parties because only one Party would ultimately prevail." (ECF No. 34, PageID 307). While the range of possible recovery is unclear, Plaintiffs provide an exact accounting of their actual recovery under the Settlement – 100% of alleged damages. (ECF No. 34, PageID 307). Lastly, Plaintiffs' Counsel recommends Settlement approval. (ECF No. 34–3, DeRose Decl., ¶ 13). Based on Counsel's "experience in numerous similar wage and hour lawsuits," they believe the Settlement is "fair and reasonable." (*Id.*). The fairness factors therefore weigh in favor of approval.

### C. Attorney's Fees

Where, as here, a FLSA settlement agreement proposes an award of attorney's fees, such fees are mandatory but must be reasonable. 29 U.S.C. § 216(b); *see also Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 894 (1984)). The Sixth Circuit has approved both the lodestar and percentage-of-the-fund method for reasonableness review of proposed fees. The Court has discretion to use either approach. *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516–17 (6th Cir. 1993). "The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately

5

reflects the results achieved." *Id.* at 517. While this Court routinely employs the percentage-of-the-fund method when reviewing FLSA settlements, the Court has discretion to choose the lodestar method based on the unique circumstances of a case, so long as it provides an explanation for its choice. *See id.*; *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

As Plaintiffs' Counsel argues, the reasonableness of the requested fee award here is best analyzed using the lodestar method. This case poses a unique circumstance in which the requested fee award is a high portion of the gross settlement amount, but a fraction of the total lodestar; the lodestar fee is $37,780.50, Counsel seeks $28,727.21. Defendant does not object to the requested amount and agrees to pay Plaintiffs' Counsel directly. (ECF No. 34–1, PageID 316–17). Accordingly, the Court will utilize the lodestar approach.

    a. **Lodestar Analysis**

A reasonable fee is "adequately compensatory to attract competent counsel" but "avoids producing a windfall for lawyers." *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021) (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)) "[T]he lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Id.* (citing *Perdue v. Kenny A.*, 559 U.S. 542, 552, (2010)). Under this approach, the Court determines counsel's reasonable hourly rates and the number of hours that counsel "reasonably expended" on the case. *Id.* (citing *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013)). Once found to be reasonable, there is a strong presumption that a plaintiff's counsel is

6

entitled to the entire lodestar fee. *Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).

Here, attorney Robert DeRose asserts that the total lodestar fee of $37,780.50 is the sum of the actual hours worked and rates billed. (ECF No. 34–3, DeRose Decl., ¶ 9). Counsel's billing records support this calculation. (ECF No. 34–3, PageID 340–61). Mr. DeRose represents that his firm calculated its *requested* lodestar based on 102.58 hours worked. The Court recognizes Mr. DeRose's experience with similar cases, (DeRose Decl., ¶¶ 2–3), and accepts his assertion that, based on his knowledge of this case and his firm's role, the number of hours expended is reasonable and appropriate. (*Id.*, ¶ 7).

The hourly rates are also reasonable. Accordingly, the Court finds the requested $28,727.21 to be reasonable under the lodestar analysis.

### b. Reasonableness Factors

To further support the conclusion above, the Court will analyze the following reasonableness factors:

> (1) the value of the benefit to the Collective, (2) society's interest in rewarding attorneys 'who produce such benefits in order to maintain an incentive to others,' (3) whether counsel took on the litigation on a contingent fee basis, (4) counsel's services value on an hourly basis, (5) the complexity of the litigation, and (6) both parties' counsel's professional skill.

*Jones v. United Am. Sec.*, No. 1:20-cv-00440, 2021 WL 3056319, at *4 (N.D. Ohio July 20, 2021) (Marbley, J.) (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)).

7

Here, Plaintiffs receive 100% of their alleged unpaid wages and liquated damages, (ECF No. 34–1, PageID 315–16), and the proposed Settlement spares significant litigation expense. (ECF No. 34, PageID 303). Second, society appreciates the efforts of attorneys who endeavor to obtain this type of result in FLSA actions. Such an outcome incentivizes both employers to pay their employees what is due and employees to bring their employers' insufficient pay practices to light. Third, Plaintiffs' Counsel took this case on a contingency fee agreement. (*Id.*, PageID 310). Fourth, Counsel's hourly rate and hours expended are reasonable, and their request for only a portion of the lodestar total supports awarding the requested fees. Fifth, the litigation was complex. It spanned thirteen months and included a contested Motion for Conditional Certification as well as difficult settlement negotiations. Lastly, the Court is familiar with Counsel's skill and experience. Accordingly, the Court approves Counsel's request for $28,727.21 in attorney's fees.

### III.  CONCLUSION

For the reasons above, the Parties' Joint Motion for FLSA Settlement Approval and Dismissal is **GRANTED**. (ECF No. 34). The claims are **DISMISSED** with prejudice. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

/s/Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**

8